# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

KATHLEEN MARTIN,

               Plaintiff,

v.

CITIBANK, N.A., and ANAND SELVA,

               Defendants.

Case No. 24-cv-3949

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS

Dated:  June 27, 2024

**MORGAN, LEWIS & BOCKIUS LLP**

Thomas A. Linthorst
Lucas D. Hakkenberg
101 Park Avenue
New York, New York 10017
thomas.linthorst@morganlewis.com
lucas.hakkenberg@morganlewis.com
Telephone: (212) 309-6000

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

I.     Preliminary Statement ........................................................................................... 1

II.    Statement of Alleged Facts ................................................................................... 1

III.   Legal Standard ...................................................................................................... 3

IV.    Argument ............................................................................................................... 3

       A.    Plaintiff Fails To Allege She Engaged In Protected Activity Under SOX ........... 3

             1.    Plaintiff Fails To Allege She Subjectively Believed She Engaged In SOX Protected Activity. ......................................................................... 4

             2.    Plaintiff's Alleged Concerns Regarding OCC Reporting Are Not Protected By SOX. ....................................................................................... 5

             3.    Plaintiff's Allegations Are Clearly Divorced From The Conduct Protected By SOX. ....................................................................................... 6

V.     Conclusion ............................................................................................................ 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bechtel v. Admin. Rev. Bd., U.S. Dep't of Lab.*,
   710 F.3d 443 (2d Cir. 2013)...................................................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................3

*Day v. Staples, Inc.*,
   555 F.3d 42 (1st Cir. 2009)..............................................................................7, 8

*Diaz v. Transatl. Reins. Co.*,
   2016 WL 3568071 (S.D.N.Y. June 22, 2016) .................................................7

*Erhart v. Bofi Holding, Inc.*,
   2016 WL 5369470 (S.D. Cal. Sept. 26, 2016)................................................4

*Erhart v. BofI Holding, Inc.*,
   612 F. Supp. 3d 1062 (S.D. Cal. 2020)............................................................5

*First State Bank of Hudson Cnty. v. United States*,
   471 F. Supp. 33 (D.N.J. 1978) .........................................................................7

*La Belle v. Barclays Cap. Inc.*,
   664 F. Supp. 3d 391 (S.D.N.Y. 2023), *aff'd*, 2024 WL 878909 (2d Cir. Mar. 1,
   2024) ...........................................................................................................4, 6, 8

*Magnuson v. Exelon Corp.*,
   658 F. Supp. 3d 652 (C.D. Ill. 2023) ..............................................................4, 6

*Neely v. Boeing Co.*,
   2018 WL 2216093 (W.D. Wash. May 15, 2018)..............................................6

*Nielsen v. AECOM Tech. Corp.*,
   762 F.3d 214 (2d Cir. 2014)............................................................................3, 7

*Portes v. Wyeth Pharms., Inc.*,
   2007 WL 2363356 (S.D.N.Y. Aug. 20, 2007)..................................................6

*Tonra v. Kadmon Holdings, Inc.*,
   405 F. Supp. 3d 576 (S.D.N.Y. 2019)...............................................................7

*United States v. Calderon*,
   944 F.3d 72 (2d Cir. 2019)................................................................................7

**Statutes**

18 U.S.C. § 1514A ..................................................................................................................5, 7

**Rules**

Fed. R. Civ. P. 12(b)(6)...........................................................................................................3

## I.        PRELIMINARY STATEMENT

Plaintiff Kathleen Martin's employment at Citibank, N.A. ("Citi") was lawfully and legitimately terminated after it was determined that she lacked the requisite leadership and engagement skills to successfully execute in the significant role of interim Data Transformation Chair.  Dismissive of feedback then, Plaintiff now asserts a single cause of action for retaliation under the Sarbanes-Oxley Act ("SOX").  Plaintiff's Complaint should be dismissed because it fails to plausibly allege a necessary element of a SOX retaliation claim – that she engaged in SOX-protected activity.

SOX is not a general purpose retaliation statute.  It protects employees from retaliation for reporting a reasonable belief of violations of specific and enumerated laws – namely, mail fraud, wire fraud, bank fraud, securities fraud, any rule or regulation of the Securities and Exchange Commission ("SEC"), or any federal law relating to fraud against shareholders.

Plaintiff alleges that she was retaliated against for "push[ing] back" against her manager in two meetings regarding data metrics that would be presented to the Office of the Comptroller of the Currency ("OCC") pursuant to the obligations of a Consent Order that Citi entered into with the OCC.  Because these allegations, even if taken as true (which they are not), do not plausibly allege that Plaintiff reported a reasonable belief of a violation of one of the laws enumerated by SOX, her Complaint should be dismissed.

## II.       STATEMENT OF ALLEGED FACTS

In November 2021, Citi hired Plaintiff, a subject matter expert in data governance, as Data Chief Administrative Officer and North America Chief Data Officer.  Compl. ¶¶ 26-29.[1]
Citi hired Plaintiff as part of its ongoing efforts to improve data maintenance practices.  Compl.

---

[1] For the purposes of this Motion only, Defendants assume the truth of the Complaint's factual allegations.

¶ 25.  Citi was responding to an October 2020 Consent Order between Citi and the OCC, which found that Citi had deficiencies in the areas of data governance, risk management, and internal controls.  Compl. ¶ 12.  Plaintiff reported to Rob Casper, Citi's Data Transformation Chair. Compl. ¶ 29.

In September 2022, in anticipation of Casper's retirement, Plaintiff was named *interim* Data Transformation Chair, reporting to Karen Peetz, Citi's Chief Administrative Officer. Compl. ¶¶ 32-33.  In March 2022, Anand Selva was named Citi's Chief Operating Officer, and Plaintiff started reporting to Selva.  Compl. ¶¶ 49-50.

Shortly after Selva assumed his new role, Plaintiff alleges that she and Selva discussed a metric designating Authoritative Data Sources under the OCC Consent Order.  Compl. ¶¶ 52-56. As was "expected," Citi had not yet made substantial progress in this metric.  Compl. ¶ 53. Plaintiff alleges that Selva wanted to misreport the data.  Compl. ¶ 54.  Plaintiff allegedly was concerned that this would violate the OCC Consent Order.   Compl. ¶ 55.  Plaintiff alleges she accurately reported the metric to the OCC, allegedly over Selva's objection.  Compl. ¶ 56.

On September 7, 2023, Plaintiff alleges that she and Selva met again to discuss another data metric, the "data governance health score" which was "low, as expected."  Compl. ¶¶ 62-65. Citi was tracking its progress on this metric under a red, amber and green reporting scale. Compl. ¶ 64.  Plaintiff alleges that she and Selva had a difference of opinion on how to represent Citi's progress on this metric on the red, amber and green reporting scale.  Compl. ¶¶ 65-66. Plaintiff then alleges that Selva asked her to "manipulate" the data in an undescribed manner so that the metric could be reported as green or that she not report the metric.  Compl. ¶¶ 67, 71. The data governance health score was subsequently reported to the Board and OCC as red, which was "expected by the timing of the agreed-to deliverables."  Compl. ¶¶ 70-71.

2

Plaintiff's employment was terminated on September 25, 2023.  Compl. ¶ 74.

## III.  LEGAL STANDARD

 To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (citation omitted).  The mere possibility that a defendant has acted unlawfully is insufficient to satisfy the pleading requirements.  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56.

## IV.  ARGUMENT

### A.    Plaintiff Fails To Allege She Engaged In Protected Activity Under SOX.

SOX is not a general purpose whistleblower statute but rather only protects employees who "report[] information based on a reasonable belief that the employer violated one of the enumerated provisions set out in the statute."[2] *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 221 n.6 (2d Cir. 2014) (the enumerated provisions in SOX include: section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders).  Thus, to allege protected activity under SOX, Plaintiff must allege that she reported a subjectively and objectively reasonable belief that one of the enumerated SOX

---

[2] A SOX claim requires Plaintiff to plead "(1) she engaged in protected activity; (2) the employer knew that she engaged in the protected activity; (3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Bechtel v. Admin. Rev. Bd., U.S. Dep't of Lab.*, 710 F.3d 443, 447 (2d Cir. 2013).

provisions was violated. *Id.* at 221 ("[A] plaintiff must show not only that he believed that the conduct constituted a violation, but also that a reasonable person in his position would have believed that the conduct constituted a violation.").

> **1.     Plaintiff Fails To Allege She Subjectively Believed She Engaged In SOX Protected Activity.**

Plaintiff alleges that she engaged in "protected activity," *see* Compl. ¶¶ 76, 78, 82, based on alleged concerns with OCC reporting. By failing to plead which SOX provision Plaintiff believes was violated, Plaintiff fails to plead her subjective belief that she engaged in SOX protected activity. *Erhart v. Bofi Holding, Inc.*, 2016 WL 5369470, at *11 (S.D. Cal. Sept. 26, 2016) (dismissing SOX claim where Plaintiff "never alleges in [her] Complaint that [Plaintiff] believed any of [Defendant]'s claimed wrongdoing constituted a violation of any of the categories of laws listed in 18 U.S.C. § 1514A(a)(1)"). As explained by the *Erhart* court, "[t]he [SOX] standard [] focuses on [Plaintiff]'s belief at the time [she] reported [Defendant]'s alleged misconduct—and whether a reasonable person in [her] position, not the Court's, would have believed that the conduct constituted a violation of the relevant laws. The Court cannot now articulate [Plaintiff]'s beliefs for [her] after the fact." *Id. See also La Belle v. Barclays Cap. Inc.*, 664 F. Supp. 3d 391, 412-13 (S.D.N.Y. 2023), *aff'd*, 2024 WL 878909 (2d Cir. Mar. 1, 2024) (granting summary judgment on grounds of subjective reasonableness as "irrespective of whether Plaintiff reported a violation of the relevant law, it would make no sense to allow a plaintiff to proceed if he himself did not hold the belief required by the statute"); *Magnuson v. Exelon Corp.*, 658 F. Supp. 3d 652, 661 (C.D. Ill. 2023) (dismissing complaint due to lack of allegations that "suggest Plaintiff undertook those actions due to a subjective belief that Defendants had committed fraud of the sort SOX contemplates").

### 2.      Plaintiff's Alleged Concerns Regarding OCC Reporting Are Not Protected By SOX.

Plaintiff's alleged protected activity of "push[ing] back" twice to proposed reporting of data metrics to the OCC is objectively not SOX protected conduct. *Erhart v. BofI Holding, Inc.*, 612 F. Supp. 3d 1062, 1099 (S.D. Cal. 2020) ("The Court underscores that § 1514A is not a general compliance statute.  It does not police all employee grievances and suspicions of wrongdoing.  A failure to comply with the Bank Secrecy Act or an OCC examination does not fit § 1514A's categories.").

Indeed, *Erhart* is particularly instructive to the present matter as plaintiff Erhart was an internal auditor who asserted that defendant:  (1) improperly removed a negative finding from an audit that went to the OCC; (2)  "falsely responded to [OCC] information requests;" (3) "withheld information that the OCC had requested;" (4) "sought to defraud the regulator;" and (5) "discouraged internal audit staff from communicating in writing during the examination because [defendant] 'did not want a paper trail regarding [its] improprieties.'"  612 F. Supp. 3d at 1080.  Plaintiff subsequently reported these concerns to the government.  *Id*.  The court found that Erhart did not engage in SOX-protected activity with respect to his theory "that the Bank was 'defrauding' its regulators, particularly the OCC":

> Erhart does not identify an SEC rule that this purported conduct violated.  Nor does he offer a meaningful explanation for why this conduct would fall under either the mail fraud, wire fraud, bank fraud, or securities fraud statutes "or any provision of Federal law relating to fraud against shareholders . . . ." *See* 18 U.S.C. § 1514A. The Court separately considers below whether this concept may fit Erhart's broader, California state law whistleblower retaliation claim.  As to Sarbanes-Oxley, however, Erhart does not demonstrate this theory falls within the grasp of § 1514A. Consequently, the Court does not apply this theory to Erhart's § 1514A claim below.

*Id*. at 1094.

The decision in *Erhart* is supported by other courts throughout the country which have rejected claims that reporting concerns about alleged violations of other laws supports a SOX claim, even for companies in highly regulated industries.  For example, in *Magnuson v. Exelon Corp.*, defendant operated nuclear power plants pursuant to licenses from the U.S. Nuclear Regulatory Commission ("NRC") and plaintiff raised concerns to the NRC about "potential violation[s] of federal regulations."  658 F. Supp. 3d 652, 656 (C.D. Ill. 2023).  The court dismissed the claims finding that such activity "cannot sustain a SOX claim because those disclosures pertain to nuclear safety issues beyond SOX's ambit."  *Id* at 661; *see also Portes v. Wyeth Pharms., Inc.*, 2007 WL 2363356, at *5 (S.D.N.Y. Aug. 20, 2007) (dismissing SOX claim where disclosures concerned "violations of regulations governing the manufacture of pharmaceuticals"); *Neely v. Boeing Co.*, 2018 WL 2216093, at *4 (W.D. Wash. May 15, 2018) (dismissing SOX claim where "[t]he SAC states that Plaintiff made complaints regarding Boeing's alleged failure to comply with FAA regulations, but Plaintiff does not allege that he reported his belief that these actions were defrauding Boeing's shareholders to Boeing or to any other federal agency").

### 3.     Plaintiff's Allegations Are Clearly Divorced From The Conduct Protected By SOX.

The allegations in the Complaint confirm that Plaintiff did not engage in SOX protected activity.  Although Plaintiff need not allege each element of the statutes enumerated in SOX, "the Second Circuit has expressly disclaimed allowing [SOX] plaintiffs to proceed without even 'approximat[ing] specific elements' of the allegedly violated provision."  *La Belle*, 664 F. Supp. 3d 391 at 416.

Plaintiff fails to plead that her protected activity constitutes mail, wire or bank fraud as those statutes require "a scheme to steal money or property" and there are no such allegations in

the Complaint. *Nielsen*, 762 F.3d at 222 ("Nielsen has not plausibly pled an objectively reasonable belief that AECOM engaged in mail or wire fraud, as both require a scheme to steal money or property—allegations that do not appear in the complaint.") *see also United States v. Calderon*, 944 F.3d 72, 85 (2d Cir. 2019) ("both wire fraud and bank fraud require the Government to prove that the defendant had an intent to deprive the victim of money or property").

Likewise, with respect to shareholder and securities fraud, the Complaint is completely bereft of allegations that "involved providing false or fraudulent information to shareholders or the public" or "any intent to deceive shareholders." *Diaz v. Transatl. Reins. Co.*, 2016 WL 3568071, at *5 (S.D.N.Y. June 22, 2016); *Nielsen*, 762 F.3d at 223 (affirming dismissal of SOX claim because asserting that a company engaged in conduct that might "expos[e] the company to extreme financial risk and thus constitute[] potential shareholder fraud…, is insufficient as a matter of law to make out a claim under § 1514A.") (cleaned up).  Indeed, while the Complaint emphasizes the importance of the OCC Consent Order and that Citi could face significant consequences from failing to comply with the Consent Order, Compl. ¶¶ 12-24, it fails to connect Plaintiff's conduct with respect to the OCC Consent Order to any alleged shareholder deception.[3]  *Day v. Staples, Inc.*, 555 F.3d 42, 56 (1st Cir. 2009) (declining to find that asserted "data manipulation" of metric "unrelated to the financial condition of the company, [that] was never reported to shareholders" constituted shareholder fraud); *Tonra v. Kadmon Holdings, Inc.*, 405 F. Supp. 3d 576, 591 (S.D.N.Y. 2019) (dismissing SOX claim where plaintiff failed to allege

---

[3] The OCC Consent Order was issued pursuant to 12 U.S. Code § 1818 which establishes the authority of federal banking regulators to take action to protect the "FDIC and the deposit insurance system against loss from undue risk." *First State Bank of Hudson Cnty. v. United States*, 471 F. Supp. 33, 35 (D.N.J. 1978) (holding that FDIC owed responsibility to protect deposit insurance system and not "the corporate entity and its shareholders").

how his concerns "would impact shareholder decision making or how the study results would change the mix of information made available to shareholders").

Finally, the Complaint is completely silent on any SEC rule or regulation that Plaintiff alleges encompassed her protected activity, and it would be particularly inappropriate for this Court to sustain Plaintiff's Complaint based on some unidentified rule or regulation of the SEC. *Day*, 555 F.3d at 57 n.14 (With respect to SOX claim, holding that "[t]he brief also makes an unspecified reference to SEC regulations; without more, the argument is waived."); *La Belle*, 664 F. Supp. 3d at 412 ("If La Belle only learned during discovery after 2019 that the SEC required work to be completed on a firm device, he cannot have believed that he was reporting a violation of such a rule in 2017.").

## V.    CONCLUSION

Because the Complaint does not plausibly allege that Plaintiff reported a reasonable belief of a violation of one of the laws enumerated by SOX, the Complaint should be dismissed.

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

DATED:  June 27, 2024

/s/ *Thomas A. Linthorst*

Thomas A. Linthorst
Lucas D. Hakkenberg
101 Park Avenue
New York, New York 10017
thomas.linthorst@morganlewis.com
lucas.hakkenberg@morganlewis.com
Telephone: (212) 309-6000

*Attorneys for Defendants*