UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

KATHLEEN MARTIN,

           Plaintiff,

    -against-

CITIBANK, N.A., and ANAND SELVA,

           Defendants.

-------------------------------------------------------- X

Civil No. 1:24-cv-03949-PAE

**ANSWER**

Defendants Citibank, N.A., ("Citi") and Anand Selva ("Selva") (collectively, "Defendants") by and through their attorneys, Morgan Lewis & Bockius LLP, hereby respond to the allegations of the Amended Complaint (the "Complaint") of Plaintiff Kathleen Martin ("Plaintiff" or "Martin") in numbered Paragraphs as follows:

## PRELIMINARY STATEMENT

1.    Citi's Data Transformation Chair is a critical role that is expected to provide dynamic leadership and partner with senior stakeholders across Citi to drive enterprise-wide change. Citi provided Plaintiff Kathleen Martin the opportunity to show on an interim basis that she could make the jump in skill set from being a subject matter expert on data governance and one of at least five direct reports to the Data Transformation Chair to fulfilling the role herself. Contrary to Plaintiff's allegations, subject matter expertise in data governance was not the keystone for success in the leader for this enterprise-wide function; the executive leading this effort must effectively communicate with and engage key stakeholders, advise them on a strategic level, and drive the execution of the strategy. Unfortunately, as detailed further below, Plaintiff was unable to fulfill this role or accept feedback regarding deficiencies in her performance, and Citi was compelled to transition Plaintiff out of her role as interim Data

Transformation Chair.  Rather than accept her own inadequate performance, Plaintiff filed the present lawsuit with its meritless accusations.

2.      At the time Plaintiff Kathleen Martin joined Citi in November 2021, she worked as a subject matter expert in data governance as part of a broader team of at least five senior managers who reported to and executed the vision of their supervisor, Rob Casper, Citi's Data Transformation Chair.  When Casper informed Citi he would be leaving, Citi began a search for his replacement.  Plaintiff, who managed only a subset of Data Transformation work under Casper, was considered for the much larger role of Data Transformation Chair, but both her interviews for the position and an assessment conducted by a leading consulting firm flagged areas of development for Plaintiff.  These flags included her:  dogmatic nature, lack of innovation and lack of experience driving the execution of complex change across Citi.  Further, there was some reservation about Plaintiff's ability to operate successfully outside of Casper's shadow.  As a result, in September 2022, Plaintiff was named interim Data Transformation Chair to give her an opportunity to prove she could perform the role.

3.      Unfortunately, as Plaintiff's former supervisor and mentor Casper stepped away from Citi, it became clear to Citi's senior leadership, including her new direct supervisor Anand Selva, Citi's COO who is leading its Transformation efforts, that Plaintiff could not successfully execute the role of interim Data Transformation Chair.

4.      Selva tried to set Plaintiff up for success by scheduling one-on-one meetings; setting up a working group in order to facilitate better collaboration and improved working relationships with important stakeholders; and encouraging her to come to the office more frequently, affording regular opportunities for direct stakeholder engagement.  Selva and his HR organization also provided Plaintiff a senior mentor to support her development.  Despite the

myriad efforts to support Plaintiff, it became clear to Citi's senior leadership, including Selva, that Plaintiff lacked the ability to partner effectively with senior executives at Citi, she was not viewed as a leader by the teams responsible for Data Transformation, and she lacked a vision for driving change and standardizing process across Citi.  Indeed, by May 2, 2023 (before Plaintiff alleges she engaged in any protected activity), discussions were underway to formulate a development plan to improve Martin's performance.  Further, after Selva conveyed Plaintiff's mid-year review to her in July 2023 (before Plaintiff reported any concerns to Citi about Selva's behavior), Plaintiff reached out to Human Resources to convey she felt her position was at risk.

5.      Ultimately, Plaintiff did not take on the feedback she was provided, and Citi was compelled to replace Plaintiff as Data Transformation Chair—the role of Data Transformation Chair was too important for Citi to tolerate Plaintiff's underperformance.

6.      Defendants look forward to defending against Plaintiff's meritless accusations and demonstrating that Plaintiff was terminated for lawful and legitimate reasons.

## RESPONSES TO PLAINTIFF'S ALLEGATIONS[1]

1.      The allegations contained in Paragraph 1 of the Complaint purport to characterize written documents and the Court is respectfully referred to these documents for their contents.

2.      Defendants admit that Martin previously worked at other financial institutions and that, in late 2021, Citi hired Martin as Managing Director, Data Chief Administrative Officer and North America Federated Chief Data Officer, reporting to Rob Casper, Data Transformation Chair, whom she previously worked for.  The allegations regarding internal documents purport to characterize written documents which contain critical feedback regarding Martin's

---

[1] To the extent any response is required to the headings in the Complaint, those allegations are denied.

performance and the Court is respectfully referred to these documents for their contents. Defendants deny that the remaining allegations in Paragraph 2.

3.      Defendants admit that Selva was Plaintiff's supervisor for a period of time and that he is Citigroup Inc.'s Chief Operating Officer.  Defendants deny the remaining allegations in Paragraph 3.

4.      Denied.

5.      Defendants admit that Plaintiff commenced employment as a Managing Director at Citi on November 1, 2021.  Defendants aver that Plaintiff ceased actively working at Citi on November 3, 2023 when she began a nonworking notice period.  The allegation that Citi was Plaintiff's employer is a legal conclusion to which no response is required.  Defendants deny the remaining allegations in Paragraph 5.

6.      The allegations in Paragraph 6 state legal conclusions to which no response is required.

7.      The allegations in Paragraph 7 state legal conclusions to which no response is required.  To the extent a response is required, Defendants aver that Selva is Chief Operating Officer of Citigroup Inc.

8.      Admitted.

9.      Admitted.

10.     The allegations in Paragraph 10 state legal conclusions to which no response is required.

11.     The allegations in Paragraph 11 state legal conclusions to which no response is required.

12.     Denied.

13.     The allegations contained in Paragraph 13 of the Complaint purport to characterize publicly available written documents and the Court is respectfully referred to these documents for their contents.

14.     Defendants neither admit nor deny this allegation as Defendants are restricted, pursuant to applicable banking regulations, from disseminating Confidential Supervisory Information, subject to applicable bank examination privileges, without the OCC's consent.  *See, e.g.*, 12 C.F.R. § 261.2.  Accordingly, Defendants further reserve the right to amend and/or supplement their answer, defenses, and all other pleadings, as authorized by the OCC.

15.     The allegations contained in Paragraph 15 of the Complaint purport to characterize a publicly available written document and the Court is respectfully referred to that document for its contents.

16.     The allegations contained in Paragraph 16 of the Complaint purport to characterize a publicly available written document and the Court is respectfully referred to that document for its contents.

17.     The allegations contained in Paragraph 17 of the Complaint purport to characterize a publicly available written document and the Court is respectfully referred to that document for its contents.

18.     The allegations contained in Paragraph 18 of the Complaint purport to characterize a publicly available written document and the Court is respectfully referred to that document for its contents.

19.     The allegations contained in Paragraph 19 of the Complaint purport to characterize a publicly available written document and the Court is respectfully referred to that document for its contents.

20.     The allegations contained in Paragraph 20 of the Complaint purport to characterize a publicly available written document and the Court is respectfully referred to that document for its contents.

21.     The allegations contained in Paragraph 21 of the Complaint purport to characterize a publicly available written document and the Court is respectfully referred to that document for its contents.

22.     The allegations contained in Paragraph 22 of the Complaint purport to characterize a publicly available written document and the Court is respectfully referred to that document for its contents.

23.     The allegations contained in Paragraph 23 of the Complaint purport to characterize a publicly available written document and the Court is respectfully referred to that document for its contents.

24.     The allegation that "the Consent Order did not end Citi's legal jeopardy" is a legal conclusion to which no response is required.  The remaining allegations contained in Paragraph 24 of the Complaint purport to characterize a publicly available written document and the Court is respectfully referred to that document for its contents.

25.     The allegations contained in Paragraph 25 of the Complaint purport to characterize a publicly available written document and the Court is respectfully referred to that document for its contents.

26.     The allegations contained in Paragraph 26 of the Complaint purport to characterize a publicly available written document and the Court is respectfully referred to that document for its contents.

27.     Denied.

28.    The allegations contained in Paragraph 28 of the Complaint purport to characterize recordings and/or transcripts and the Court is respectfully referred to those recordings and/or transcripts for their contents.

29.    The allegations contained in Paragraph 29 of the Complaint purport to characterize recordings, transcripts, and/or a news article and the Court is respectfully referred to those recordings, transcripts, and news article for their contents.

30.    Defendants admit that Citi is undergoing a multi-year Transformation to change Citi's business and operating models to strengthen risk and controls, and improve Citi's value to customers, clients and shareholders, and to the extent the allegations in Paragraph 30 purport to characterize documents, recordings and/or transcripts, the Court is respectfully referred to these documents, recordings and/or transcripts for their contents.

31.    The allegations contained in Paragraph 31 of the Complaint purport to characterize recordings and/or transcripts and the Court is respectfully referred to those recordings and/or transcripts for their contents.

32.    Citi regularly communicates with shareholders to address questions or concerns. Except as admitted the allegations in Paragraph 32 are denied.

33.    Defendants admit that on July 10, 2024 the OCC fined Citi $75 million and the Federal Reserve fined Citigroup $60.6 million related to Citi's progress on the respective Consent Orders, which included the progress made while Martin was the interim Data Transformation Chair, and to the extent the allegations purport to characterize written documents publicly issued by the OCC or the Federal Reserve, the Court is respectfully referred to those documents for the contents thereof.

34.     The allegations contained in Paragraph 34 of the Complaint purport to characterize recordings and/or transcripts and the Court is respectfully referred to those recordings and/or transcripts for their contents.

35.     The allegations contained in Paragraph 35 of the Complaint purport to characterize a written document and the Court is respectfully referred to that document for its contents.

36.     Defendants aver that in 2021, Citi hired Rob Casper to lead Citi's Data Transformation as the Data Transformation Chair, and that Casper hired Plaintiff as his Data Chief Administrative Officer and North America Federated Chief Data Officer, reporting to him. Defendants deny the remaining allegations in Paragraph 36.

37.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 37 of the Complaint and on that basis deny them.

38.     Defendants aver that Plaintiff represented to Citi that she worked at Morgan Stanley, GE Capital and JP Morgan Chase in the roles described in Paragraph 38.

39.     Defendants lack sufficient knowledge or information as to Plaintiff's state of mind.  Defendants aver that Plaintiff was an at-will employee at all times during her employment with Citi and deny the remaining allegations in Paragraph 39.

40.     Defendants admit that Martin commenced employment with Citi on November 1, 2021 as Managing Director, Data Chief Administrative Officer and Federated North America Chief Data Officer within Citi's Chief Administrative Office, reporting directly to Rob Casper ("Casper"), Citi's Data Transformation Chair, and deny the remaining allegations in Paragraph 40.

41.     Denied.

42.    Defendants aver that, in March 2022, under the direction and supervision of Casper, Plaintiff was part of a team responsible for Article V of the Consent Decree. Defendants deny the allegations related to Plaintiff's promotion.  Defendants neither admit nor deny the remaining allegations in Paragraph 42 as they relate to Confidential Supervisory Information, subject to applicable bank examination privileges, which Defendants are restricted, pursuant to applicable banking regulations, from disseminating, without the OCC's consent. *See, e.g.*, 12 C.F.R. § 261.2.  Accordingly, Defendants further reserve the right to amend and/or supplement their answer, defenses, and all other pleadings, as authorized by the OCC.

43.    Defendants admit that, in anticipation of Casper's retirement from Citi, Citi considered both internal and external candidates to replace Casper as the Data Transformation Chair.  Defendants admit that Plaintiff interviewed with certain members of Citi's Board and Executive Management Team and aver that Citi conducted an assessment of Plaintiff's strengths and development opportunities related to the role.  Defendants aver that these interviews and assessment revealed concerns that Plaintiff was not an innovative thinker, took an overly dogmatic approach to her work, and had development opportunities with respect to her communication and partnership with Citi's senior leadership.  Due to reservations regarding Plaintiff's ability to successfully perform the role of Data Transformation Chair, she was named interim Data Transformation Chair.

44.    Admitted.

45.    Denied.

46.    Defendants aver that Plaintiff was part of a team that met with and responded to questions from the OCC related to Article V of the Consent Order. Defendants neither admit nor deny the remaining allegations in Paragraph 46 as they relate to Confidential Supervisory

Information, subject to applicable bank examination privileges, which Defendants are restricted, pursuant to applicable banking regulations, from disseminating, without the OCC's consent. *See, e.g.*, 12 C.F.R. § 261.2. Accordingly, Defendants further reserve the right to amend and/or supplement their answer, defenses, and all other pleadings, as authorized by the OCC.

47.    Defendants aver that Martin acknowledged receiving her annual review on January 23, 2023.

48.    The allegations contained in Paragraph 48 of the Complaint purport to characterize Plaintiff's 2022 year-end performance documentation which primarily reflects Plaintiff's performance before becoming interim Data Transformation Chair, in a much smaller role as one of Casper's at least five direct reports; covered a period of time where her supervisor Casper was still providing the vision for Citi's Data Transformation; and was based only on "indications to date" as to her performance as interim Data Transformation Chair. The Court is respectfully referred to that Performance Review for its contents.

49.    The allegations contained in Paragraph 49 of the Complaint purport to characterize Plaintiff's 2022 year-end performance documentation which primarily reflects Plaintiff's performance before becoming interim Data Transformation Chair, in a much smaller role as one of Casper's at least five direct reports; covered a period of time where her supervisor Casper was still providing the vision for Citi's Data Transformation; and was based only on "indications to date" as to her performance as interim Data Transformation Chair. The Court is respectfully referred to that documentation for its contents.

50.    The allegations contained in Paragraph 50 of the Complaint purport to characterize Plaintiff's 2022 year-end performance documentation which primarily reflects Plaintiff's performance before becoming interim Data Transformation Chair, in a much smaller

role as one of Casper's at least five direct reports; covered a period of time where her supervisor Casper was still providing the vision for Citi's Data Transformation; and was based only on "indications to date" as to her performance as interim Data Transformation Chair. The Court is respectfully referred to that documentation for its contents.

51.     The allegations contained in Paragraph 51 of the Complaint purport to characterize Plaintiff's 2022 year-end performance documentation which primarily reflects Plaintiff's performance before becoming interim Data Transformation Chair, in a much smaller role as one of Casper's at least five direct reports; covered a period of time where her supervisor Casper was still providing the vision for Citi's Data Transformation; and was based only on "indications to date" as to her performance as interim Data Transformation Chair.  The Court is respectfully referred to that documentation for its contents.

52.      The allegations contained in Paragraph 52 of the Complaint purport to characterize Plaintiff's 2022 year-end performance documentation which primarily reflects Plaintiff's performance before becoming interim Data Transformation Chair, in a much smaller role as one of Casper's at least five direct reports; covered a period of time where her supervisor Casper was still providing the vision for Citi's Data Transformation; and was based only on "indications to date" as to her performance as interim Data Transformation Chair.  The Court is respectfully referred to that Performance Review for its contents.

53.     The allegations contained in Paragraph 53 of the Complaint purport to characterize Plaintiff's 2022 year-end performance documentation which primarily reflects Plaintiff's performance before becoming interim Data Transformation Chair, in a much smaller role as one of Casper's at least five direct reports; covered a period of time where her supervisor Casper was still providing the vision for Citi's Data Transformation; and was based only on

"indications to date" as to her performance as interim Data Transformation Chair.  The Court is respectfully referred to that documentation for its contents.

54.     The allegations contained in Paragraph 54 of the Complaint purport to characterize Plaintiff's 2022 year-end performance documentation which primarily reflects Plaintiff's performance before becoming interim Data Transformation Chair, in a much smaller role as one of Casper's at least five direct reports; covered a period of time where her supervisor Casper was still providing the vision for Citi's Data Transformation; and was based only on "indications to date" as to her performance as interim Data Transformation Chair.  The Court is respectfully referred to that documentation for its contents.

55.     The allegations contained in Paragraph 55 of the Complaint purport to characterize Plaintiff's 2022 year-end performance documentation which primarily reflects Plaintiff's performance before becoming interim Data Transformation Chair, in a much smaller role as one of Casper's at least five direct reports; covered a period of time where her supervisor Casper was still providing the vision for Citi's Data Transformation; and was based only on "indications to date" as to her performance as interim Data Transformation Chair.  The Court is respectfully referred to that documentation for its contents.

56.     The allegations contained in Paragraph 56 of the Complaint purport to characterize Plaintiff's 2022 year-end performance documentation which primarily reflects Plaintiff's performance before becoming interim Data Transformation Chair, in a much smaller role as one of Casper's at least five direct reports; covered a period of time where her supervisor Casper was still providing the vision for Citi's Data Transformation; and was based only on "indications to date" as to her performance as interim Data Transformation Chair.  The Court is respectfully referred to that documentation for its contents.

57.     The allegations contained in Paragraph 57 of the Complaint purport to characterize Plaintiff's 2022 year-end performance documentation which primarily reflects Plaintiff's performance before becoming interim Data Transformation Chair, in a much smaller role as one of Casper's at least five direct reports; covered a period of time where her supervisor Casper was still providing the vision for Citi's Data Transformation; and was based only on "indications to date" as to her performance as interim Data Transformation Chair.  The Court is respectfully referred to that Performance Review for its contents.

58.     The allegations contained in Paragraph 58 of the Complaint purport to characterize a written document and the Court is respectfully referred to that document for its contents.

59.     Denied.

60.     Defendants aver that on or about March 21, 2023 Citi announced that Selva would be COO of Citigroup Inc.  Defendants otherwise deny the allegations set forth in Paragraph 60.

61.     Admitted.

62.     The allegations contained in Paragraph 62 of the Complaint purport to characterize recordings and/or transcripts and the Court is respectfully referred to those recordings and/or transcripts for their contents.

63.     Defendants deny the allegations in Paragraph 63 and specifically deny that Selva ever urged Martin to make false reports.

64.     Defendants aver that on or about May 12, 2023 Plaintiff, Selva and others met about a variety of topics, including certain metrics pursuant to Article V of the Consent Order. Defendants neither admit nor deny the remaining allegations in Paragraph 64 as they relate to Confidential Supervisory Information, including progress on the Consent Order, subject to

applicable bank examination privileges, which Defendants are restricted, pursuant to applicable

banking regulations, from disseminating, without the OCC's consent. *See, e.g.*, 12 C.F.R. §

261.2. Accordingly, Defendants further reserve the right to amend and/or supplement their

answer, defenses, and all other pleadings, as authorized by the OCC.

65.     Defendants aver that Plaintiff had a responsibility to accurately report information

to the OCC, the Board and the EMT. Defendants neither admit nor deny the remaining

allegations in Paragraph 65 as they relate to Confidential Supervisory Information, including

progress on the Consent Order, subject to applicable bank examination privileges, which

Defendants are restricted, pursuant to applicable banking regulations, from disseminating,

without the OCC's consent. *See, e.g.*, 12 C.F.R. § 261.2. Accordingly, Defendants further

reserve the right to amend and/or supplement their answer, defenses, and all other pleadings, as

authorized by the OCC.

66.     Defendants deny the allegations in Paragraph 66 and specifically deny that Selva

instructed Martin to misreport data.

67.     Defendants deny all allegations in Paragraph 67 including that Plaintiff had any

basis to believe that Selva proposed to obstruct reporting to federal regulators, lie to regulators,

or fail to comply with any obligation under the Consent Order.

68.     Defendants lack sufficient knowledge or information to form a belief as to the

truth of Martin's characterization of her own thoughts and on that basis deny the allegations.

Defendants further deny that Martin had any basis to believe that Selva proposed to misreport the

data, obstruct reporting to federal regulators, lie to regulators, or violate the Consent Order or

any federal law or regulation.

69.    Defendants deny the allegations in Paragraph 69 and specifically deny that Selva instructed Martin to misreport data.

70.    Defendants deny that Martin protested that the metric had to be reported accurately or that Selva objected to doing so.  Defendants neither admit nor deny the remaining allegations in Paragraph 70 as they relate to Confidential Supervisory Information, including reporting to the OCC, subject to applicable bank examination privileges, which Defendants are restricted, pursuant to applicable banking regulations, from disseminating, without the OCC's consent.  *See, e.g.*, 12 C.F.R. § 261.2.  Accordingly, Defendants further reserve the right to amend and/or supplement their answer, defenses, and all other pleadings, as authorized by the OCC.

71.    Defendants deny the allegations in Paragraph 71 and specifically deny that Selva made any unlawful request.

72.    Defendants deny that there was ever a promise to lift Plaintiff's interim title and aver that Plaintiff's interim title was not removed at the time of her mid-year review, or subsequently, due to continued concerns (which predated Selva's supervision of Plaintiff) regarding Plaintiff's engagement and leadership abilities and concerns about her lack of openness to take feedback or accept alternate points of view, and inability to operate with broader perspective given the large scope of the role.  Defendants deny the remaining allegations in Paragraph 72.

73.    Denied.

74.    Denied.

75.    Denied.  Defendants further aver that Plaintiff's performance as interim Data Transformation Chair did not meet expectations, that her performance shortcomings were

identified prior to May 12, 2023, and that plaintiff was provided with feedback on these shortcomings.

76.    Defendants admit that Selva had a meeting with Martin and others on September 7, 2023 to discuss, among other topics, data metrics.  Defendants aver that Article III of the Consent Order requires that Citi report to the Board a progress report containing "reporting of data quality that includes metrics that are accurate and meaningful."  Defendants deny the remaining allegations in Paragraph 76.

77.    Defendants neither admit nor deny this allegation as Defendants are restricted, pursuant to applicable banking regulations, from disseminating Confidential Supervisory Information, subject to applicable bank examination privileges, without the OCC's consent.  *See, e.g.*, 12 C.F.R. § 261.2.  Accordingly, Defendants further reserve the right to amend and/or supplement their answer, defenses, and all other pleadings, as authorized by the OCC.

78.    Defendants aver that, among other things, Citi tracked its progress on certain data metrics on a red, amber and green reporting scale.  Defendants neither admit nor deny the allegations regarding reporting under the Consent Order in Paragraph 78 that relate to Confidential Supervisory Information, subject to applicable bank examination privileges, which Defendants are restricted, pursuant to applicable banking regulations, from disseminating, without the OCC's consent.  *See, e.g.*, 12 C.F.R. § 261.2.  Accordingly, Defendants further reserve the right to amend and/or supplement their answer, defenses, and all other pleadings, as authorized by the OCC.  Defendants deny the remaining allegations in Paragraph 78.

79.    Defendants aver that in September 2023 Selva and Martin discussed how to report certain metrics on the red, amber and green reporting scale.  Defendants neither admit nor deny the allegations regarding the data governance health score and the Consent Order as these

allegations relate to Confidential Supervisory Information, subject to applicable bank examination privileges, which Defendants are restricted, pursuant to applicable banking regulations, from disseminating, without the OCC's consent. *See, e.g.*, 12 C.F.R. § 261.2. Accordingly, Defendants further reserve the right to amend and/or supplement their answer, defenses, and all other pleadings, as authorized by the OCC. Defendants deny the remaining allegations in Paragraph 79.

80. Denied.

81. Defendants deny the allegations in Paragraph 81 and specifically deny that Selva ever directed Martin to manipulate data.

82. Defendants deny the allegations in Paragraph 82 and specifically deny that Plaintiff had any basis to believe that Selva proposed conduct which would be misleading or unlawful.

83. Denied.

84. Defendants neither admit nor deny the allegations regarding Articles III and V of the Consent Order as they relate to Confidential Supervisory Information, including reporting regarding the Consent Order, subject to applicable bank examination privileges, which Defendants are restricted, pursuant to applicable banking regulations, from disseminating, without the OCC's consent. *See, e.g.*, 12 C.F.R. § 261.2. Accordingly, Defendants further reserve the right to amend and/or supplement their answer, defenses, and all other pleadings, as authorized by the OCC. Defendants deny the remaining allegations in Paragraph 84.

85. Defendants deny the allegations in Paragraph 85 and specifically deny that Plaintiff had any basis to believe that Selva proposed conduct to deceive regulators.

86.     Defendants deny the allegations in Paragraph 86 and specifically deny that Selva ever directed Martin to misreport any metric.

87.     Defendants neither admit nor deny the allegations regarding Citi's reporting to the OCC and the Consent Order as these allegations relate to Confidential Supervisory Information subject to applicable bank examination privileges, which Defendants are restricted, pursuant to applicable banking regulations, from disseminating, without the OCC's consent. *See, e.g.*, 12 C.F.R. § 261.2. Accordingly, Defendants further reserve the right to amend and/or supplement their answer, defenses, and all other pleadings, as authorized by the OCC. Defendants deny the remaining allegations in Paragraph 87, and specifically deny that Selva ever directed Martin to falsely report any metric.

88.     Citi avers that Plaintiff reported concerns to HR in September 2023 about interpersonal conflict with Selva along with professional disagreement regarding certain data metrics. Citi denies the remaining allegations in Paragraph 88.

Selva lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 88 of the Complaint and on that basis denies them.

89.     Citi avers that in accordance with Citi policy concerns raised to a human resources representative by Plaintiff in September 2022 were submitted by the HR representative to the Ethics Office.

Selva lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 89 of the Complaint and on that basis denies them.

90.     Denied.

91.     Defendants aver that key stakeholders had raised concerns about Plaintiff's performance as interim Data Transformation Chair. In particular, Defendants aver that Plaintiff

failed to develop the executive level relationships needed to execute Citi's Data Transformation, that various constituencies at Citi did not view Plaintiff as a leader, and as a result, she was failing to perform in her role as interim Data Transformation Chair.

92.    Defendants deny that Plaintiff engaged in protected activity and aver that Martin did not meet performance expectations in her role as the interim Data Transformation Chair.  The allegations regarding Martin's performance reviews purport to characterize a written document which relates largely to her performance before becoming interim Data Transformation Chair, in a much smaller role as one of Casper's at least five direct reports; covered a period of time where her supervisor Casper was still providing the vision for Citi's Data Transformation; and was based only on "indications to date" as to her performance as interim Data Transformation Chair. The Court is respectfully referred to that documentation for its contents.  Defendants deny the remaining allegations in Paragraph 92.

93.    Defendants aver that Plaintiff failed to build relationships with or engage on a strategic level with key stakeholders.  Defendants deny the remaining allegations in Paragraph 93.

94.    Denied.

95.    Denied.

96.    Denied.

97.    Defendants incorporate by reference their Responses to Paragraphs 1 through 96 as if fully set forth herein.

98.    Denied

99.    Denied.

## UNNUMBERED PARAGRAPHS

Defendants admit that Plaintiff seeks certain relief; however, Defendants deny that Plaintiff is entitled to any relief in this matter, including, but not limited to, the remedies described and the relief requested in the Prayer for Relief of the Complaint and any of its subparagraphs.

Defendants admit that Plaintiff demands a trial by jury but deny the remaining allegations in "Jury Demand."

## DEFENSES

1.      Plaintiff's claim may be barred, in whole or in part, to the extent that she failed to timely exhaust her administrative remedies or prerequisites prior to the commencement of this action.

2.      To the extent Plaintiff is pursuing a claim that is broader than the complaint she filed with the Occupational Safety and Health Administration, Plaintiff has failed to properly exhaust her administrative remedies.

3.      Plaintiff's claim is barred, in whole or in part, by the applicable statute(s) of limitations.

4.      Plaintiff's claim is barred, in whole or in part, by the doctrine of laches, waiver, estoppel, unclean hands, and/or other equitable defenses.

5.      All actions taken with respect to Plaintiff were taken in good faith and for legitimate non-retaliatory reasons.

6.      Defendants' actions taken with respect to Plaintiff were justified by legitimate business reasons not related to any protected conduct or activity.

7.      Plaintiff did not reasonably believe that Defendants' alleged conduct violated any law or rule or regulation.

8.      Plaintiff's conduct did not constitute protected conduct under the Sarbanes-Oxley Act.

9.      Defendants deny that any protected conduct by Plaintiff or any other impermissible factor played any role in the employment decisions relating to Plaintiff.  Moreover, the same decisions would have been reached for legitimate and lawful reasons regardless of any alleged protected activity.

10.     Plaintiff is not entitled, on the law or the facts, to any of the damages claimed, including, but not limited to, compensatory or punitive damages.

11.     To the extent that Plaintiff has failed to mitigate her alleged damages, her claims and remedies are diminished or barred.

12.     Defendants allege that to the extent that, during the course of the litigation, it acquires any evidence of wrongdoing by Plaintiff, which wrongdoing would have materially affected the terms and conditions of Plaintiff's employment and would have resulted in Plaintiff not being hired or being either demoted, disciplined, or terminated, such after-acquired evidence shall bar or limit Plaintiff's claims for liability and/or damages, assuming arguendo Plaintiff is able to establish liability.

13.     Plaintiff's claims or issues are precluded, in whole or in part, by any judgment or adjudication reached in any other action between the parties, including in arbitration.

**MORGAN, LEWIS & BOCKIUS LLP**

DATED:  August 22, 2024

/s/ *Thomas A. Linthorst*

Thomas A. Linthorst
Lucas D. Hakkenberg
101 Park Avenue
New York, New York 10017
thomas.linthorst@morganlewis.com
lucas.hakkenberg@morganlewis.com
Telephone: (212) 309-6987

*Attorneys for Defendants*